IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KEVIN D. MORRIS**                     Case Number 1:15 CV 1796

    Petitioner,                          Judge Christopher A. Boyko

     v.                                REPORT AND RECOMMENDATION

**JASON BUNTING,**

    Respondent.                          Magistrate Judge James R. Knepp II

### INTRODUCTION

This cause is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) for findings of

fact, conclusions of law, and recommendations. Kevin D. Morris, a *pro se* Ohio prisoner, has filed

a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Warden Jason

Bunting, filed an answer with attached exhibits. (Doc. 10). Petitioner filed a reply (Doc. 13) and

Respondent filed a sur-reply (Doc. 14). Following review, and for the reasons stated below, the

undersigned recommends the Petition be dismissed.

### BACKGROUND

In 2013, a jury convicted Morris of one count of trafficking in heroin in violation of Ohio

Rev. Code § 2925.03(A)(1) (Count 1), two counts of possession of criminal tools in violation of

Ohio Rev. Code § 2923.24 (Counts 2 and 4), and one count of possession of heroin in violation of

Ohio Rev. Code § 2925.11 (Count 3). Each count carried a forfeiture specification.

On May 28, 2013, Morris was sentenced to concurrent terms of nine months of imprisonment

on each of the trafficking and possession of criminal tool charges (Counts 1, 2, 4) and six years of

imprisonment for the possession of heroin charge (Count 3). (Doc. 10–1, at 30). The sentence was

to be served consecutive to a two-year sentence Morris received after having pleaded guilty to

cocaine trafficking and possession. Therefore, Morris received an aggregate sentence of eight years of imprisonment.

## FACTS

The Ohio Court of Appeals summarized the facts of the case as follows:

{¶ 1} Defendant-appellant, Kevin D. Morris, appeals his convictions for Possession of Heroin and Possessing Criminal Tools, following a jury trial in the Lake County Court of Common Pleas, and the denial of his Motion for New Trial. The issues before this court are whether forensic evidence such as fingerprints and chemical analysis is sufficient to support a conviction for possession of drugs found in another's dwelling, and whether a new trial is merited based on newly discovered evidence tending to impeach one of the State's witnesses. For the following reasons, we affirm the judgments of the court below.

{¶ 2} On March 22, 2013, the Lake County Grand Jury issued an Indictment, charging Morris with Trafficking in Heroin (Count 1), a felony of the fifth degree in violation of R.C. 2925.03(A)(1); Possessing Criminal Tools (Count 2), a felony of the fifth degree in violation of R.C. 2923.24; Possession of Heroin (Count 3), a felony of the second degree in violation of R.C. 2925.11; and Possessing Criminal Tools (Count 4), a felony of the fifth degree in violation of R.C. 2923.24. All Counts of the Indictment carried a forfeiture specification, pursuant to R.C. 2941.1417 and 2981.04.

{¶ 3} On March 29, 2013, Morris appeared for arraignment and entered a plea of "not guilty."

{¶ 4} Morris' case was tried to a jury from April 23 through 25, 2013. The following testimony was presented on behalf of the State:

{¶ 5} Sergeant Brad Kemp of the Lake County Narcotics Agency testified that, on February 6, 2013, he participated in a "buy bust of heroin," targeting "Kevin Morris, a.k.a. Snake." Kemp conducted surveillance of a two-family residence at 207 West Jackson Street in Painesville, Ohio, while a confidential informant (CI) entered to purchase heroin from Morris.

{¶ 6} After the CI departed, Sergeant Kemp observed a Pontiac and a Dodge Dakota leave the residence. The Dodge was driven by Edward Nardi, a resident of 207 West Jackson Street, and was stopped at a nearby Clark gas station. Nardi later gave his consent to search the residence.

{¶ 7} Kemp continued his surveillance of the residence until Morris, Brian Wicks,

2

and Raymond Hardmon (a.k.a.Dro) exited on foot, walking northbound on Jefferson Street. Morris was arrested and taken to jail. Kemp then conducted a search of the residence with Nardi present.

{¶ 8} Kemp described the residence as a "very small" two bedroom apartment. Nardi slept in one of the bedrooms. In the second bedroom, Kemp observed a digital scale on top of a dresser. In the top drawer, there was a glass dinner plate, razor blade, syringes, and a "brownish off-white substance" believed to be heroin. Underneath the mattress in the second bedroom, Kemp found a press, which is used for diluting the purity of heroin. Kemp noted that the heroin on the plate had a cylindrical shape consistent with the shape of the press.

{¶ 9} James Gerlosky (a.k.a. Dustin) testified that he is a recovering heroin addict and confidential informant for the Mentor Police Department. Gerlosky, who was already familiar with Morris, texted him and arranged to purchase $130 worth of heroin ("about a gram"). Prior to the transaction, Gerlosky was searched and provided with marked money and a "wire" recording device. Gerlosky was initially directed to the Grant Street Apartments in Painesville. When Morris did not appear, Gerlosky contacted him again and was directed to a house on First Street. Recordings of Morris directing Gerlosky to Grant and First Streets were played for the jury. Prior to arriving at First Street, narcotics agents removed Gerlosky's wire since Morris was acting suspicious and asking questions.

{¶ 10} After arriving at the house on First Street, Gerlosky was directed to 207 West Jackson Street. Hardmon (Dro) answered the door and admitted Gerlosky. Hardmon threw Gerlosky against the wall and patted him down. Morris then told Gerlosky he would have to try some heroin before he would sell him the gram. Gerlosky went to the bathroom with Hardmon and pretended to snort a line of heroin. Gerlosky then tried to hand Morris the money but he refused to take it, telling Gerlosky to hand it to an "older white gentleman" who was present. Morris gave Gerlosky the heroin and Gerlosky departed.

{¶ 11} Gerlosky admitted that, during the debriefing following the buy, he told the narcotics agents that he handed the money to Morris and that he ingested some of the heroin before blowing the rest of it away.

{¶ 12} Kimberly Krall, a forensic chemist at the Lake County Crime Laboratory, testified that the substance recovered from Gerlosky constituted 0.64 grams of heroin and the substance found at the West Jackson residence constituted 27.65 grams of heroin.

{¶ 13} Douglas Rhode, the supervisor of chemistry and toxicology at the Lake County Crime Laboratory, analyzed the heroin recovered from Gerlosky and the heroin found in the West Jackson residence. Rhode testified that both quantities of

heroin contained other substances: diphenhydramine, mannitol, papaverine, noxetine and acidulated codeine. Diphenhydramine and mannitol are "cutting agents," i.e. "something that will be added to the pure drug." Papaverine, noxetine and codeine are components of poppy seed milk, occurring naturally in morphine, and may be present in heroin as residue from the conversion process. Based on the presence of these substances in the two quantities of heroin, Rhode testified that it was "probable," "60 percent, somewhere in that range," that they came from the same source.

{¶ 14} Sergeant Toby Burgett of the Painesville Police Department testified that, on February 6, 2013, he was performing surveillance of 207 West Jackson Street as part of the controlled buy targeting Morris and participated in Morris' arrest. Burgett recovered "over $1,000 in one of [Morris'] front pockets." Burgett assisted in the search of the residence. Burgett described the second bedroom, where the scale, heroin, and press were found, as having a bed with no sheets, a dresser, and a closet. Burgett testified that "it didn't appear anybody was actually living in that room."

{¶ 15} Special Agent 85 of the Lake County Narcotics Agency prepared Gerlosky for the February 6, 2013 controlled buy. Agent 85 also participated in the surveillance operation and collected the evidence from the West Jackson Street residence.

{¶ 16} Detective Jason Hughes of the Painesville Police Department participated in Morris' arrest on February 6, 2013, seizing from him a cellular phone. Hughes testified about the unsuccessful efforts to recover the marked money used in the controlled buy.

{¶ 17} Special Agent 88 of the Lake County Narcotics Agency participated in the surveillance operation and the arrest of Morris. Agent 88 testified that Morris' cellular number was 216–218–5769.

{¶ 18} Marcela Delvalle testified that, on February 6, 2013, she was at Nardi's house on West Jackson Street with Nardi, David Dawson (her boyfriend), Morris, and "random people." She identified the residence as Nardi's "home," but noted that "people just stayed there * * * and did whatever it was they did." Delvalle asked Morris for heroin that day but was told "it's not good right now." Delvalle assumed that Morris needed "to cut it," noting that Morris, like "everybody does," cuts his heroin with mannitol. Delvalle recalled a white male coming to the house and buying drugs, which she believed was crack, from Morris.

{¶ 19} Delvalle admitted that she was arrested that day and charged with Possession of Heroin. Pursuant to a cooperation agreement with the State, she would be charged with a misdemeanor in exchange for her testimony.

4

{¶ 20} Raymond Jorz, the senior fingerprint and firearms examiner for the Lake County Crime Laboratory, examined the dinner plate taken from the West Jackson Street residence. Jorz was able to develop a single partial latent fingerprint on the back of the plate which he identified as belonging to Morris' right little finger.

{¶ 21} Detective Donald Seamon of the Lake County Sheriff's Office maintains the jail call system at the Lake County Jail. Seamon authenticated recordings of various telephone conversations Morris had while at the Lake County Jail.

{¶ 22} Special Agent 76 of the Lake County Narcotics Agency worked with Gerlosky in setting up the buy bust. Gerlosky first called Morris to ask if he would "be around later," and Morris said yes. Gerlosky then texted Morris "got 130," meaning $130 of heroin, and received the reply "K," meaning okay. Agent 76 testified that Gerlosky contacted Morris using the 216–218–5769 number.

{¶ 23} On the day of the buy bust, Agent 76 followed Gerlosky from Grant Street to First Street to West Jackson Street. Following the buy, Agent 76 met with Gerlosky and received a physical description of Morris, which information he radioed to the other officers and agents who effected Morris' arrest.

{¶ 24} At the close of Agent 76's testimony, a recording of telephone conversations Morris made while in jail was played for the jury. In these conversations, Morris explained that they "fucked the whole case up": "I ain't never get no marked money. Pat got the marked money. They ain't never get the marked money from Pat." Morris spoke about recovering the $1,080 seized at the time of his arrest: "That's the money I made off drugs period but * * * they gotta prove it, they can't prove it." Morris spoke about having his telephones turned off: "Tell him it's just the 218–5769 * * * that's the main one. That's the one really need to get cut off."

{¶ 25} Morris identified Gerlosky (Dustin) as the informant, but claimed that he could not have been with the DEA because "I seen that dude do drugs." Morris also stated that "Dustin could have never been no informant for that long * * * I would have been catch him a long time ago when I first started fucking with him * * * he kind of like a 'day one' a little bit." When discussing whether Gerlosky had a wire, Morris asserted "we wiped that nigger down." He continued that, even if Gerlosky had a wire, there was too much noise in the house for a recording to be possible.

{¶ 26} At the close of the State's case, counsel for Morris moved for acquittal on all charges pursuant to Criminal Rule 29. The trial court denied the motion.

{¶ 27} The jury returned a verdict finding Morris guilty of all Counts and the following items subject to forfeiture: the heroin, cellular phone, glass plate, digital scale, razor blades, Sharpstone press, and $1,081 in cash.

{¶ 28} On May 28, 2013, a sentencing hearing was held. The trial court ordered Morris to serve a nine-month prison term for Trafficking in Heroin (Count 1), a nine-month prison term for Possessing Criminal Tools (Count 2), a mandatory six-year prison term for Possession of Heroin (Count 3), and a nine-month prison term for Possessing Criminal Tools (Count 4). The sentences were to be served consecutively with each other for a total term of imprisonment of six years and consecutively with the sentence imposed in Lake County Court of Common Pleas Case No. 12–CR–000223.

{¶ 29} On May 31, 2013, the trial court memorialized Morris' sentence in a written Judgment Entry of Sentence.

*State v. Morris*, Nos. 2013-L-057, 2013-L-058, 2014 WL 4825141, at *1–4 (Ohio Ct. App. Sept. 30, 2014).

On June 11, 2013, Morris, through counsel, appealed the jury's verdict to the Ohio Court of Appeals. (Doc. 10–1, at 78, 81). The court sua sponte consolidated Morris's appeals of his heroin and cocaine convictions. (Doc. 10–1, at 84).

On October 3, 2013, Morris moved the trial court for leave to file a motion for a new trial pursuant to Ohio Crim. R. 33. Morris alleged that he had discovered new evidence that the confidential informant was being investigated for and admitted to stealing money and drugs during controlled drug buys. (Doc. 10–1, at 39). On October 9, 2013, the trial court denied the motion for lack of jurisdiction due to Morris's pending appeal. (Doc. 10–1, at 41).

On February 12, 2014, Morris again moved the trial court for leave to file a motion for a new trial. (Doc. 10–1, at 43). Upon Morris's request (Doc. 10–1, at 45), the Ohio Court of Appeals stayed the appeal and remanded the case to the trial court. (Doc. 10–1, at 48). The trial court then granted leave to file the motion for a new trial. (Doc. 10–1, at 50).

On March 24, 2014, Morris filed a motion for a new trial alleging that the informant "had been charged with Tampering with Evidence in Geauga County [Ohio], based on [the informant's]

taking money and drugs while working as a CI." *Morris*, 2014 WL 4825141, at \*7. (Doc. 10–1, at 51). The State opposed Morris's motion. (Doc. 10–1, at 67).

Agreeing the evidence was newly discovered, "[t]he trial court found that Morris failed to demonstrate that the newly discovered evidence would have likely changed the result of trial, was material to the issues, and did not merely impeach [the informant's] trial testimony." *Morris*, 2014 WL 4825141, at \*7. The trial court concluded that Morris had failed to satisfy the requirements for a new trial under *State v. Petro*, 76 N.E.2d 370 (Ohio 1947). Finding there was "sufficient independent evidence to support the conviction," the trial court denied the motion for a new trial on April 23, 2014. (Doc. 10–1, at 74).

When Morris's appeal resumed, he raised the following assignments of error:

1. The trial court committed prejudicial error in failing to grant Defendant–Appellant's Rule 29 Motion concerning Counts 3 and 4. The evidence presented by the State lacked sufficient weight to sustain a conviction on Counts 3 and 4.

2. Did the trial court failed to hold a hearing and/or conduct a due process analysis to determine whether Defendant–Appellant Mr. Morris' substantial rights have been materially affected?

(Doc. 10–1, at 86, 94).

The Ohio Court of Appeals supplemented the record with the trial court's judgment denying the motion for a new trial. (Doc. 10–1, at 101, 104).

On September 30, 2014, the court of appeals affirmed the trial court's judgment. *Morris*, 2014 WL 4825141, at \*7. The court held that there was sufficient evidence to support the convictions for possession of heroin and criminal tools. Further, the court determined the informant's theft during a controlled buy was irrelevant to the issue of whether Morris had sold the informant drugs. *Morris*, 2014 WL 4825141, at \*6–7.

7

On November 14, 2014, Morris filed a pro se appeal with the Supreme Court of Ohio, raising the following issues:

1.    When the state's evidence is insufficient to support a criminal conviction as well as lacks the sufficient weight, a trial court violates a defendant's constitutional rights to a fair trial and the dur [sic] process of law by not granting a rule 29 [sic] motion to acquit on all charges.

2.    When the state uses the testimony of a C.I. to obtain a conviction who himself is under indictment for illegal activities committed while working in that capacity and the state knowingly suppresses that material information at trial, a court violates the defendant's constitutional rights by denying him a hearing and relief on that claim after it is discovered. All of which violates this appellants [sic] constitutional rights under the 5th and 14th amendments. [sic]

(Doc. 10–1, at 137).

On March 25, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the case.

(Doc. 10–1, at 176).

Morris then filed his pro se habeas corpus petition with this Court on September 3, 2015. In his petition, Morris raises the following grounds for relief:

GROUND 1: INSUFFICIENT EVIDENCE TO SUPPORT CONVICTION IN VIOLATION OF THE%TH [sic] 5th and 14th amendments. [sic]

Supporting facts: No drugs were found in the possession of this petitioner, no buy money and the only thing linked this petitioner to the heroin in question is proximity all of which violated his rights as all essential elements of his charges were not proven beyond a reasonable doubt[.]

GROUND 2: State used dirty CI to obtain conviction and the court would not hold a hearing on a new trial motion with this new evidence violating 5th and 4th amends. [sic]

Supporting facts: The state's CI, upon whose testimony was this conviction primarily obtained was himself convicted for tampering with the evidence, (Drugs) in another case, all of which was known by the prosecutor which violates this petitioner's rights under the 5th and 14th amendments of the us const. [sic]

(Doc. 1, at 5, 7).

Following the filing of the Respondent's answer  (Doc. 10), Morris filed a reply wherein he challenges for the first time his trafficking conviction (Count 1), along with his possession of heroin conviction (Doc. 13, at 4). The Respondent filed a sur-reply arguing that Morris's challenge to his trafficking charge is procedurally barred from habeas corpus review. (Doc. 14, at 2–3).

### STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court cannot grant a habeas corpus petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Under the contrary to clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the unreasonable application clause, a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the petitioner's case. *Id.* at 413. To obtain habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

To analyze whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, courts look only to the holdings of the Supreme

Court's decisions as of the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). The state court's factual findings are presumed correct unless rebutted by the habeas corpus petitioner by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004).

### DISCUSSION

Before seeking a writ of habeas corpus in federal court, a petitioner must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). This requirement is designed to give state courts the initial opportunity to pass upon and, if necessary, correct errors of federal law in a state prisoner's conviction or sentence. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). The purpose of exhaustion "is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

To properly exhaust state remedies, the petitioner must "fairly present" a claim in each of the appropriate state courts, including a state supreme court, in a procedurally appropriate manner. *O'Sullivan*, 526 U.S. at 845. In Ohio, this requires direct and delayed appeals to the Ohio Court of Appeals and the Supreme Court of Ohio. *See Allen v. Perini*, 424 F.2d 134, 140 (6th Cir. 1970).

As the Supreme Court noted in *Picard*,

> If the exhaustion doctrine is to prevent unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution, it is not sufficient merely that the federal habeas applicant has been through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

*Picard*, 404 U.S. at 275–76 (internal quotation marks and citations omitted).

"It is not enough that all the facts necessary to support the federal claim were before the state courts, . . . or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). The legal and factual "substance" of the federal claim must have been presented to the state courts. *Id*. The claim to the state courts must be presented as a federal constitutional claim, not merely as an issue arising under state law. *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Ordinarily, a state prisoner does not "fairly present" a claim to a state court if the petition, brief, or document does not alert the court "to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

> In determining whether a petitioner has fairly presented a federal constitutional claim to the state courts, a habeas court may consider whether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law. A petitioner need not cite chapter and verse of constitutional law, but general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated.

*Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (internal quotation marks, alterations, and citations omitted).

A petitioner wanting to raise a federal issue can indicate the federal law basis for the claim in a state-court petition or brief by citing the federal source of law or a case deciding such a claim on federal grounds. *Baldwin*, 541 U.S. at 32.

In Ohio, a criminal constitutional question cannot be raised in the Supreme Court of Ohio unless it was presented and argued in the lower court. *State v. Phillips*, 272 N.E.2d 347, 352 (Ohio

11

1971). Where an appeal is taken to the Supreme Court of Ohio, the court will not consider or determine errors that were not raised and preserved in the court of appeals. *Id.* Thus, an issue raised for the first time in the Supreme Court of Ohio is waived. It will not be reviewed by the Supreme Court of Ohio, and the issue is deemed not to have been properly exhausted for federal habeas review. *See Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Phillips*, 272 N.E.2d at 352.

The failure to properly present a federal ground to the state courts constitutes procedural default or waiver barring federal habeas corpus review. *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996). When the petitioner fails to fairly present to the state courts the claim on which he seeks relief in federal court, and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *O'Sullivan*, 526 U.S. at 853–54.

Federal courts will normally consider a default to have occurred if the last "reasoned state judgment rejecting a federal claim" makes a plain statement regarding the procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). If the relevant issues were not presented at all to the state courts, the statement is unnecessary. *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989).

A habeas corpus petitioner procedurally defaults a claim if:

(1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (citations omitted); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The "cause" standard in procedural–default cases requires a petitioner to show that "some objective factor external to the defense" impeded his efforts to raise a claim in the state courts. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotation marks omitted). Such factors may

12

include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available. *Id*. at 493–94.

**Trafficking in Heroin (Count 1)**

In his reply, Morris contends for the first time that there was insufficient evidence to support his trafficking conviction. The argument is procedurally barred from habeas corpus review because the issue was not presented to Ohio's appellate courts.

To properly exhaust his state remedies, Morris must fairly present his claims to each of the appropriate state courts, including the Supreme Court of Ohio, in a procedurally appropriate manner. *See O'Sullivan*, 526 U.S. at 845. Because Morris failed to present this claim to the appellate courts of Ohio, a default has occurred. *Gray*, 518 U.S. at 161–62. In addition, cause and prejudice have not been established to excuse the default, *Maupin*, 785 F.2d at 138, and Morris has not shown the alleged constitutional violation resulted in the conviction of an innocent individual. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

**Insufficient Evidence - Possession of Heroin**

Morris contends there was insufficient evidence to support his possession of heroin conviction in violation of his Fifth and Fourteenth Amendment rights. He states that no drugs or money to buy drugs was found in his possession. Rather the only thing linking him to the heroin found by law enforcement was his proximity to the drugs. Morris states the conviction violated his constitutional rights as the essential elements of the offense were not proven beyond a reasonable doubt. (Doc. 1, at 5, 17–18).

The Ohio Court of Appeals stated:

13

{¶ 42} There was abundant circumstantial evidence that Morris exercised dominion and control over the heroin and the plate. There was evidence that Morris was selling heroin out of the residence where the heroin and plate were found. The appearance and composition of the heroin sold matched the appearance and composition of the heroin found in the drawer. Morris' fingerprint was found on the plate. Despite the fact that other people were present in the house, there was no evidence that any of them sold heroin and/or exerted control over the heroin and plate found in the drawer. It was reasonable to infer that the heroin Morris sold to Gerlosky was originally part of the heroin found in the drawer and that Morris used the plate and other drug paraphernalia (scale, razor blades, press) in the drawer to prepare the heroin for sale. Thus, Morris had sufficient control of the heroin and the plate to sustain his convictions. *Compare State v. Jester*, 12th Dist. Butler No. CA2010–10–264, 2012–Ohio–544, ¶ 26–27 (Jester's presence at a residence where drugs were found was sufficient to establish constructive possession).

*Morris*, 2014 WL 4825141, at *6.

In a habeas corpus proceeding challenging the sufficiency of the evidence, Morris is entitled to relief only if based upon the evidence presented, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011)).

On federal habeas review, a federal court may not reject a state court's decision on the sufficiency of the evidence simply because the federal court may disagree with the state court. *Id.* Federal courts must defer to the state appellate court's sufficiency determination as long as the determination is reasonable. 28 U.S.C. § 2254(d)(2); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) ("we must determine whether the Ohio Court of Appeals itself was unreasonable in its conclusion that a rational trier of fact could find Brown guilty beyond a reasonable doubt based upon the evidence introduced at trial"). The evidence must be viewed in the light most favorable to the

14

prosecution, requiring only that jurors "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

The summation of the facts by the Ohio Court of Appeals establishes that there was more than sufficient evidence presented at trial to convict Morris. This abundance of evidence is sufficient for a rational trier of fact to agree with the jury. *Coleman*, 132 S. Ct. at 2062. Further, in deferring to the decision of the Ohio Court of Appeals, the court's decision is reasonable. 28 U.S.C. § 2254(d)(2); *Brown*, 567 F.3d at 205. Accordingly, Morris is not entitled to habeas corpus relief on this argument.

**Use of the Criminal Informant**

Morris argues that the prosecution relied on the testimony of an informant who himself was convicted of tampering with evidence in another case. Morris states because the prosecution knew of the informant's illegal actions, the state violated Morris's constitutional rights. In analyzing this issue, the Ohio Court of Appeals observed:

> {¶ 50} Gerlosky's theft of money and/or dope during a controlled buy is not relevant to the issue of whether it was Morris who sold him the heroin. Rather, this evidence would only serve to impeach Gerlosky's credibility. Even on this issue, the evidence was cumulative. At trial, Gerlosky admitted to giving contradictory statements about snorting the heroin prior to the buy and to whom he handed the money for the buy. As to whether it was Morris who sold Gerlosky the heroin, there was abundant corroborative evidence such as the texts to Morris' phone setting up the buy, Delvalle's testimony, the fingerprint linking Morris to the heroin found in the house, and Morris' own statements made in the recorded jail conversations.

> {¶ 51} Morris argues that, since he "alleged that the prosecution suppressed evidence, he is not subject to the usual burden required to obtain a new trial—demonstrating that the newly discovered evidence probably would have resulted in acquittal." We find no merit in the claim that the prosecution withheld exculpatory evidence.

> {¶ 52} The Complaint against Gerlosky in Geauga County charges him with conduct occurring on April 25, 2013, the same date that the jury returned its guilty verdicts

15

against Morris. The Complaint was not issued until July 23, 2013, at which time
Morris had already been sentenced. Thus, the newly discovered evidence on which
Morris relies did not exist until after the conclusion of his case. It was not possible
for the State to have withheld this evidence during Morris' trial.

*Morris*, 2014 WL 4825141, at *7.

Morris accuses the prosecution of engaging in misconduct by suppressing evidence regarding

the criminal activity of the state's informant in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment, irrespective of the good faith

or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "To assert a successful *Brady* claim, a habeas

petitioner must show that: (1) evidence favorable to the petitioner, (2) was suppressed by the

government, and (3) the petitioner suffered prejudice." *Johnson v. Bell*, 525 F.3d 466, 475 (6th Cir.

2008) (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). "*Brady* requires that the prosecution

disclose evidence that may impeach the credibility of a witness." *Wilson v. Parker*, 515 F.3d 682,

701 (6th Cir. 2008) (citing *Giglio v. United States*, 405 U.S. 150, 153–54 (1972)).

"Evidence is material if there is a reasonable probability that, had the evidence been

disclosed to the defense, the outcome of the case would have been different." *Id*. (citing *Kyles v.

Whitley*, 514 U.S. 419, 433–34 (1995)). "A reasonable probability is a 'probability sufficient to

undermine confidence in the outcome.'" *Id*. at 701–02 (quoting *United States v. Bagley*, 473 U.S.

667, 682 (1985)). "[T]he *Brady* standard is not met if the petitioner shows merely a reasonable

*possibility* that the suppressed evidence might have produced a different outcome; rather a

reasonable *probability* is required." *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011)

(emphasis in original).

Morris's allegation of prosecutorial misconduct is a factual impossibility. The complaint

16

against the informant alleged the informant's criminal conduct did not occur until the same day the

jury convicted Morris. Further, the complaint was not issued until July 23, 2013, after Morris had

been sentenced. The evidence upon which Morris relies on to seek relief did not exist until *after* the

conclusion of his case. Thus, it was impossible for the prosecution to have suppressed this evidence

during Morris's trial. *Morris*, 2014 WL 4825141, at *7. Accordingly, Morris has not established a

claim of prosecutorial misconduct so as to warrant habeas corpus relief.

### Trial Court's Refusal to Hold Evidentiary Hearing

Morris contends that the trial court erred in denying him an evidentiary hearing on his

motion for a new trial. In addressing this issue, the Ohio Court of Appeals stated:

> {¶ 44} In his second assignment of error, Morris argues the trial court erred by
> denying his Motion for New Trial without hearing.
>
> {¶ 45} "A new trial may be granted on motion of the defendant * * * [w]hen new
> evidence material to the defense is discovered, which the defendant could not with
> reasonable diligence have discovered and produced at the trial." Crim. R. 33(A)(6).
>
> {¶ 46} "To warrant the granting of a motion for a new trial in a criminal case, based
> on the ground of newly discovered evidence, it must be shown that the new evidence
> (1) discloses a strong probability that it will change the result if a new trial is
> granted, (2) has been discovered since the trial, (3) is such as could not in the
> exercise of due diligence have been discovered before the trial, (4) is material to the
> issues, (5) is not merely cumulative to former evidence, and (6) does not merely
> impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76
> N.E.2d 370 (1947), syllabus.
>
> {¶ 47} "The granting of a motion for a new trial upon the ground [of newly
> discovered evidence] is necessarily committed to the wise discretion of the court, and
> a court of error cannot reverse unless there has been a gross abuse of that discretion.
> And whether that discretion has been abused must be disclosed from the entire
> record. * * * The new testimony proffered must neither be impeaching nor
> cumulative in character. Were the rule otherwise the defendant could often easily
> avail himself of a new trial upon the ground claimed. Unless the trial court or court
> of error, in view of the testimony presented to the court and jury, finds that there is
> a strong probability that the newly discovered evidence will result in a different
> verdict, a new trial should be refused." *State v. Lopa*, 96 Ohio St. 410, 411, 117 N.E.

319 (1917).

> {¶ 48}Subsequent to Morris' conviction and sentencing, it was revealed that Gerlosky had been charged with Tampering with Evidence in Geauga County, based on Gerlosky's taking money and drugs while working as a CI. Gerlosky stated to a sheriff's deputy that, while "working with Mentor Police or Lake County Narcotics * * * that he took money once and dope once."

> {¶ 49}The trial court found that Morris failed to demonstrate that the newly discovered evidence would have likely changed the result of trial, was material to the issues, and did not merely impeach Gerlosky's trial testimony. We agree.

*Morris*, 2014 WL 4825141, at *6–7.

Morris did not present his evidentiary hearing argument as a violation of federal law, nor is there any indication that would have alerted the Ohio Court of Appeals to the fact Morris's argument was raised under both state and federal law. Because Morris failed to raise the issue as one under federal law, the issue was not fairly presented to the state courts of Ohio. *Baldwin*, 541 U.S. at 32. This failure constitutes a procedural default barring federal habeas corpus review. *Gray*, 518 U.S. at 161–62. Morris has not established cause and prejudice to excuse the default, *Maupin*, 785 F.2d at 138, nor has he established that this alleged constitutional violation "probably resulted in the conviction of one who is actually innocent . . . ." *Murray*, 477 U.S. at 496.

Further, the issue was raised and addressed by the Ohio Court of Appeals as a violation of state law. Violations of state law or state procedures are not normally cognizable in habeas corpus proceedings. *Mijkovic v. Woods*, 517 F. App'x 392, 393 (6th Cir. 2013); *Brown v. McKee*, 460 F. App'x 567, 572 (6th Cir. 2012).

In his reply, Morris argues he "is entitled to an evidentiary hearing if that hearing, will develop facts which when proven true, will entitle him to relief, an evidentiary hearing must be held." (Doc. 13, at 9–10). Morris cites *Schriro v. Landrigan*, 550 U.S. 465 (2007), to support his

18

position. *Schriro* addresses the question of when a *federal* court should conduct an evidentiary hearing under the AEDPA. *Schriro*, 550 U.S. at 473–74. *Schriro* is not applicable to the state courts of Ohio.

Morris has not shown that the decisions by Ohio's courts were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or were based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412–13. Therefore, Morris is not entitled to habeas corpus relief.

CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned recommends that the petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be dismissed.

 s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time *WAIVES* the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).